IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **TAMARA K. RICHARDS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:16-CV-246 |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Tamara K. Richards ("Richards") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Richards alleges that the ALJ erred by failing to give greater weight to the opinion of her treating physician, failing to properly account for her moderate impairment with concentration, persistence and pace, and failing to properly assess her credibility. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Richards's Motion for Summary Judgment (Dkt. No. 19), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 21.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Richards failed to demonstrate that she was disabled under

1

the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Richards filed for SSI and DIB on February 28, 2012, claiming that her disability began on January 15, 2011. R. 385–398. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 198–269. On April 9, 2014, ALJ R. Neely Owen held a video hearing to consider Richards's disability claim. R. 1373–1404. Richards was represented by an attorney at the hearing, which included testimony from Richards and vocational expert Gerald Wells. Id. The ALJ left the record open after the hearing for Richards to obtain additional medical evidence from Cyrus Bakhit, M.D. The records were submitted and the ALJ held a supplemental video hearing on September 18, 2014. R. 161–197, 1370–1372. The supplemental hearing included testimony from medical experts Charles L. Cooke, M.D., and Robert Muller, Ph.D., as well as vocational expert Arthur M. Brown. R. 161–197.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

On September 25, 2014, the ALJ entered his decision analyzing Richards's claim under the familiar five-step process,[2] and denying Richards's claim for disability. R. 15–33. The ALJ found that Richards suffered from the severe impairments of fibromyalgia, scoliosis, a discogenic/degenerative back disorder, bipolar disorder, anxiety, an underlying personality disorder and carpal tunnel syndrome. R. 18. The ALJ found that Richards retained the RFC to perform a broad range of light work, but she is limited to occasional crawling, should avoid hazards such as heights, moving machinery, concentrated exposure to extreme heat or cold or dusts, odors, fumes, etc. R. 21. The ALJ also found that Richards is limited to simple, repetitive tasks, and should have minimal contact with the general public. Id.

The ALJ determined that Richards could not return to her past relevant work as an insurance agent, office manager, loan officer, or bartender (R. 31), but that Richards could work at jobs that exist in significant numbers in the national economy, such as housekeeper/cleaner, marker, and inspector. R. 32. Thus, the ALJ concluded that Richards was not disabled. R. 33.

Richards submitted additional evidence after the ALJ's decision (R. 44–160), which the Appeals Council found was new information about a later time period and did not provide a basis for changing the Appeals Council's decision. R. 2. On March 25, 2016, the Appeals Council denied Richards's request for review (R. 1–6), and this appeal followed.

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

### Treating Physician

Richards asserts that the ALJ erred by giving little weight to the opinion of her treating physician, Cyrus Bakhit, M.D. Richards argues that Dr. Bakhit's opinions are supported by clinical and laboratory findings and are consistent with other substantial evidence in the record. Pl. Br. Summ. J. p. 52. Richards also asserts that the ALJ erred by relying upon the opinions of the state agency physicians which were rendered prior to submission of all of the medical evidence in the record. Id.

Richards has fibromyalgia, scoliosis, carpal tunnel syndrome, and degenerative back disease. Richards underwent carpal tunnel surgery in 2011. R. 807. Richards began treating with Dr. Bakhit in June 2012 for pain management. R. 804. Her treatment generally consisted of follow up visits, steroid injections, nerve root blocks and pain medications, which have been effective in managing her pain. R. 614, 629, 638, 804, 879, 1243, 1259, 1284, 1300. On August 12, 2012, Dr. Bakhit completed a Medical Source Statement and found that Richards can lift up to 20 pounds occasionally and less than 10 pounds frequently; can stand and walk 4 hours in an 8 hour day; has no limitations on sitting; can occasionally climb, balance, kneel, crouch, crawl, stoop and reach overhead. He also found that Richards had limited ability to push and pull with her upper and lower extremities, and that she would be absent from work about three times a month. R. 838–41. Dr. Bakhit completed a second medical source statement on April 11, 2014, and assessed the same restrictions with the addition of limited reaching and handling in all directions. R. 1263–66.

On June 5, 2012, medical consultant Robert Keeley reviewed Richards's records and determined that she was capable of lifting 20 pounds occasionally and 10 pounds frequently;

4

sitting, standing and walking 6 hours in an 8 hour day; unlimited pushing and pulling; occasionally climbing ramps, stairs, ladders, stooping, kneeling, and crouching; and never crawling. R. 207–08. Mr. Keeley also found that Richards had limited ability to reach in front, laterally and overhead with both hands. Id.  On October 19, 2012, state agency physician Brian Strain, M.D., reviewed Richards's records and agreed with Mr. Keeley's findings. R. 242–44.

Consultative physician Charles Cooke, M.D., reviewed Richards's medical records and testified as to her functional limitations at the administrative hearing on September 18, 2014. R. 172–84.  Dr. Cooke testified that Richards "does indeed" have back pain from scoliosis, particularly in her neck; that she's had numerous injections to facet joints and other areas with a transient improvement. R. 176.  Dr. Cooke noted that Richards had total range of movement in her neck, her hip joints were normal, range of movement in her lower extremities were normal, and straight leg raising tests were negative. R. 175.  Dr. Cooke also stated that he found no objective evidence in the record to account for Richards's complaints of debilitating headaches. R. 181–82.  Dr. Cooke found that Richards was capable of lifting 20 pounds occasionally and 10 pounds frequently; standing, walking and sitting for 6 hours in an 8 hour day; occasionally crouching or crawling; and must avoid hazardous areas, extreme cold and heat, and fumes, odors, dust and poor ventilation. R. 178–79.  He found that Richards would have no manipulative limitations. Id.

After reviewing Richards's treatment records, her statements of symptoms and the medical opinion evidence, the ALJ gave Dr. Bakhit's opinions little weight, finding them inconsistent with the credible evidence of record, including Dr. Bakhit's own findings on examination. R. 30.  The ALJ noted that most of Richards's medical treatment consisted of routine follow up appointments with unremarkable findings. The ALJ particularly noted Dr.

5

Bakhit's findings that Richards had only paravertebral tenderness in her spine, some diminished range of motion with pain elicited primarily upon extension and lateral flexion, no gross neurological deficits in her upper or lower extremities, and no difficulty with ambulation. R. 30.

The ALJ generally agreed with the findings of the state agency physicians, but gave greater weight to Dr. Cooke's opinion, finding it more consistent with the minimal findings on diagnostic testing and examination, Richards's lack of significant upper or lower extremity strength deficits, and the conservative nature of her treatment. R. 31.

A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09cv1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011).

If the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)– (5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001)). While the regulations require the ALJ to consider

all five factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11cv29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012).

Substantial evidence supports the ALJ's decision to give little weight to Dr. Bakhit's opinions. The ALJ explained his reasons for rejecting Dr. Bakhit's opinions, and his conclusion that Dr. Bakhit's limitations were inconsistent with Richards's physical examinations, objective findings, conservative treatment and reports of functioning. The ALJ examined Richards's medical history and complaints in detail in his decision prior to discussing Dr. Bakhit's opinions. R. 21–30. Overall, the ALJ determined that the record contradicted Dr. Bakhit's findings that Richards could only stand and walk for 4 hours in an 8 hour day, has limited ability to push and pull with her upper and lower extremities, and would miss three days of work per month. R. 30.

Specifically, the ALJ noted that Richards's X-Rays, MRIs and other imagery evidence revealed only mild scoliosis and mild degenerative changes. Id. Likewise, an EMG of her upper extremities revealed only mild right carpal tunnel syndrome. Id. Further, Richards's records reflect negative straight leg raise tests, mildly reduced range of motion in her spine, and no significant strength or sensory deficits in her extremities. Id. The ALJ discussed Richards's treatment with carpal tunnel surgery in 2011, from which she recovered successfully, and her follow-up visits with Dr. Bakhit for pain management. The ALJ noted that Richards was treated with steroid injections and nerve root blocks, which helped reduce and control her pain. Id. Additionally, Richards has not had ongoing treatment by a rheumatologist for fibromyalgia or a neurologist for her carpal tunnel syndrome since 2011. Id. The ALJ also noted that Richards engaged in daily activities that contradict her complaints of debilitating limitations, such as continuing to work at substantial gainful activity levels for six months after her onset date,

7

working again in January 2014 for the Botetourt Athletic Club, and exercising to get back into shape. Id. Dr. Bakhit's limitations were also contradicted by the other medical opinions in the record, including the testimony of medical expert Dr. Cooke, who had the benefit of reviewing the entire medical record available to the ALJ and hearing the testimony of Richards at the administrative hearing. Thus, the ALJ gave good reasons for giving Dr. Bakhit's opinion little weight, which are supported by substantial evidence in the record.

### **Mental Impairments**

Richards argues that the RFC set forth by the ALJ failed to properly account for her limitations with concentration, persistence and pace as required by SSR 96-8p. Pl. Br. Summ. J. pp. 52–58. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Richards further argues that the ALJ failed to properly account for her limitations with concentration, persistence and pace when developing the RFC and when posing hypothetical questions to the vocational expert.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)).

Here, the ALJ's discussion of Richards's mental limitations satisfies the requirements of SSR 96-8p. The ALJ considered both medical and non-medical evidence in assessing Richards's RFC and provided the narrative discussion required by the regulations. The ALJ reviewed the

8

history of Richards's mental symptoms and her mental health treatment in detail. R. 22–29. The ALJ then summarized the evidence relating to Richards's mental health symptoms and treatment, and noted that Richards "has not seen a mental health specialist for her impairments since January 2013, but that she has nevertheless been able to function well since then, with stable and well controlled anxiety and bipolar symptoms." R. 30. The ALJ reviewed Richards's daily activities and found that they were not as limited as she alleged. Id. The ALJ also reviewed the opinion evidence, including the opinion of consultative psychologist Dr. Muller. R. 23, 31. Thus, the ALJ's narrative discussion considering the medical opinions, Richards's testimony, and evidence of mental impairment satisfied the requirements of SSR 96-8p. See Taylor v. Astrue, No. 11-cv-32, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (noting that while SSR 96-8p requires an ALJ to consider the evidence presented on a function-by-function basis, it does not require the ALJ to produce such a detailed statement in writing, but rather is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions).

Richards argues that the RFC set forth by the ALJ of "simple, repetitive tasks" failed to properly account for her limitations with concentration, persistence and pace. In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638; see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. 2005)). The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been

appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015). The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion, and ensure that the hypothetical presented to the vocational expert includes all of the limitations set forth in the RFC.

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011), where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at * 7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative

10

physician that plaintiff's impairment in concentration, persistence and pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857 at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r, No. SAG-14-2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence or pace does not prevent him from performing simple, spoken instructions and simple routine tasks). Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step 4 analysis, and noted that his treating physicians found that he exhibited good attention, intact memory, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5. The court found that these reasons constituted "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus, there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

    Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and those limitations must be included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony,

11

medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Here, substantial evidence supports the ALJ's decision that despite Richards's limitations in concentration, persistence, or pace, she was capable of performing simple, repetitive tasks. Richards has a history of bipolar disorder, personality disorder, depression and anxiety. Her records reflect that her psychological symptoms responded well to medication, but were exacerbated when Richards had more extreme stressors in her life. R. 853–54, 857, 886, 896, 1040, 1325, 1359, 1365.

On June 4, 2012, state agency psychologist Jo McClain reviewed Richards's records, and determined that she had mild restriction of activities of daily living, moderate difficulties maintaining social functioning, and maintaining concentration, persistence or pace. R. 205. Dr. McClain found that Richards could carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance and be punctual, sustain an ordinary routine, and make simple work-related decisions. R. 210. Dr. McClain also found that Richards would be moderately limited in her ability to complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods. Id. Dr. McClain determined that Richards "depressive and anxiety/panic [symptoms] would limit but not preclude her ability to perform detailed work, maintain focus, and complete a workweek without interruptions. She is capable of performing 1–3 step tasks on a routine basis for 1 hour blocks of time and regular breaks." R. 210. On October 18, 2012, state agency psychologist Howard Leizer, Ph.D., reviewed Richards's records on reconsideration, and concurred with Dr. McClain's findings. R. 263.

Dr. Muller testified at the supplemental hearing with regard to Richards's mental impairments. R. 184–88. Dr. Muller noted that Richards was treated for bipolar disorder, personality disorder and depression; that she responded well to medication, but her symptoms exacerbate when significant stressors arise in her life, such as marital issues and separation. R. 185–86. Dr. Muller found that Richards is "fairly stable" when on medications. R. 186. Dr. Muller concluded that Richards is capable of simple, routine type tasks, and "might actually be capable of even more complex tasks." R. 187. Dr. Muller found that Richards should have minimized contact with the general public because she noted feeling uncomfortable in public places. R. 188. Dr. Muller found that Richards would have only mild issues with dealing with co-workers and supervisors, maintaining reliability and attendance, and staying on task or maintaining attention, concentration, persistence and pace. R. 188.

The ALJ reviewed Richards's records in detail, along with the medical opinions. Based on the record evidence, the ALJ determined that Richards had moderate difficulties in maintaining concentration, persistence and pace in step 3 of her analysis. R. 20. The ALJ noted, "[s]he is able to pay bills, handle money and has been noted to have no significant memory or attention deficits. However, she indicated some difficulty handling stress, handling changes in a routine and following instructions." R. 20.

In step 4 of his analysis, the ALJ reviewed Richards's testimony, the medical evidence and the opinion evidence in detail. The ALJ gave Dr. Muller's opinion great weight, finding it consistent with the evidence of record, and limited Richards to simple, repetitive tasks with minimal contact with the general public. The ALJ noted that he generally agreed with the opinions of the state agency physicians, but gave greater weight to the opinion of Dr. Muller because it was more consistent with the evidence of record. R. 31.

13

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. All of the reviewing and testifying mental health physicians found that despite her moderate impairment, Richards was capable of completing short, simple tasks and sustaining a regular work schedule and functioning as the job required. The ALJ specifically asked Dr. Muller if Richards would have any issues with being able to stay on task or maintain attention, concentration, persistence and pace, to which he replied, "I would see mild difficulties." R. 188. The ALJ accounted for Dr. Muller's recommendations by limiting Richards to simple, repetitive work with minimal contact with the general public, and included that limitation in the hypothetical question given to the vocational expert. R. 21, 191–92. Accordingly, substantial evidence supports the ALJ's determination that Richards was capable of performing simple, repetitive tasks despite her impairment with concentration, persistence or pace.

## **Credibility**[3]

Richards also asserts that the ALJ's credibility determination is not supported by substantial evidence and does not contain specific reasons for his rejection of Richards's

---

[3] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7p when it ruled in SSR 16-3p that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3p at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3p was issued after the ALJ's consideration of Richards's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's "credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking"). However, I note that the methodology required by both SSR 16-3p and SSR 96-7p, are quite similar. Under either, the ALJ is required to consider Richards's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3p, this resulted in a "credibility" analysis, in SSR 16-3p, this allows the adjudicator to evaluate "consistency."

allegations. Pl. Br. Summ. J. p. 19–20.  After a review of Richards's treatment records and allegations of disability, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credibly for the reasons explained in this decision.

R. 29.   The ALJ outlined his reasons for this determination, noting that Richards's objective exams, X-Rays, MRIs and EMGs were either normal or revealed mild findings; that her records reflect only mildly reduced range of motion in her spine and she otherwise had normal strength in her extremities; she was able to ambulate without assistance and her pain was generally managed by treatment and medications. R. 29–30.  The ALJ also noted that Richards's daily activities were not as limited as she alleged, as she worked both in 2011 and 2014, and reported exercising to get back into shape in 2014.  R. 30.  See Dolfax v. Astrue, 7:09–cv–67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Richards's subjective allegations of her disabling pain, symptoms, and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weight them accordingly. See SSR 96–4p, (July 2, 1996); SSR 96–7p, (July 2, 1996).

Here, the ALJ found "that the claimant has some limitations due to her impairments. However, the totality of the evidence fails to substantiate that her limitations are of the degree and intensity alleged and that they are of a nature to preclude her from performing basic work activities, at least at the limited light exertional level." R. 30. The ALJ's opinion includes detailed consideration of Richards's medical history, Richards's claimed limitations, and the medical opinion evidence. The ALJ found that Richards's treatment record does not support her allegations of debilitating pain in her back, neck and extremities. R. 29. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Substantial evidence supports the ALJ's determination that Richards's testimony is only partially credible, and that Richards is capable of performing work at the level stated in the ALJ's opinion.

## RECOMMENDED DISPOSITION

For the foregoing reasons, I recommend affirming the Commissioner's decision, **GRANTING** the defendant's motion for summary judgment, and **DENYING** Richards's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected

to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                           Enter: June 28, 2017

                                           *Robert S. Ballou*

                                           Robert S. Ballou
                                           United States Magistrate Judge