CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 27 2018

JULIA C. DUDLEY, CLERK
BY: A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAMARA K. RICHARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:16cv00246 |
| v. | ) |
| | ) |
| NANCY A. BERRYHILL, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Tamara K. Richards has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

I.

Richards raised three arguments on summary judgment and makes the same three arguments in her objections to the magistrate judge's report and recommendation, taking issue with the magistrate judge's assessment of those arguments and his conclusions generally. The purpose of magistrate judge review is to conserve judicial resources. United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007). To that end, the objection requirement

set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." Id. (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United

States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather

3

than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

Richards's objections are, in large part, a reiteration of the arguments she raised on summary judgment and are not the type of specific objections required by Rule 72(b). However, the court has reviewed de novo those portions of the magistrate judge's report to which Richards properly objected and finds the ALJ's decision is supported by substantial evidence.

## II.

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce

4

v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

### III.[1]

Richards first objects to the magistrate judge's conclusion that substantial evidence in the record supports the ALJ's decision to give little weight to the opinions of treating pain management physician, Dr. Cyrus Bakhit. Richards argues the ALJ erred in giving more weight to the opinions of the reviewing state agency physicians, because they did not have all of the record evidence before them when they rendered those opinions, and in giving more weight to the opinion of the non-treating, non-examining medical expert, Dr. Cooke. She further contends that the ALJ ignored contradictory objective evidence, such as findings of muscle spasms, cervical and lumbar facet joint arthropathy, decreased lumbar lordosis, antalgic gait, and reversal of the normal cervical curve. Richards raised all of these arguments on summary judgment.[2] Rather than point the court to any specific errors in the magistrate judge's analysis, she simply disagrees with his conclusion and uses her objections as a vehicle for rehashing arguments she previously raised. This makes the initial reference to the magistrate judge useless. See Veney, 539 F. Supp. 2d at 846.

---

[1] Detailed facts about Richards's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 26) and in the administrative transcript (ECF No. 7). As such, they will not be repeated here.
[2] In fact, the passage in her objections citing the objective evidence she claims the ALJ ignored comes almost word-for-word from her summary judgment brief. Compare Pl.'s Obj., ECF No. 27, at 2-3, with Pl.'s Summ. J. Br., ECF No. 20, at 20.

5

In any event, the court finds no error in either the magistrate judge's report or the ALJ's decision as regards the opinion of Dr. Bakhit. The ALJ spent seven full pages of his opinion detailing the medical evidence of record in this case and another two pages explaining the reasons for his residual functional capacity assessment. The ALJ discussed the lack of imagery evidence supporting the degree of limitation Richard alleges, the unremarkable findings on examination by her treating physicians, and the nature of her routine and conservative treatment. (R. 20-30.) The ALJ further found her level of activity during the relevant period to be "contraindicative of [an] individual with a completely debilitating condition." (R. 30.)

> For example, she continued working at substantial gainful activity levels for about 6 months after her onset date, until July 2011, and indicated recently in January 2014, that she was working at the Botetourt Athletic Club helping out and doing some exercises to get back in shape (Exhibit 26F/21). She also reported in July 2013, that she had injured her shoulder after she swam with only her left arm across a lake dragging a canoe.

(R. 30.)

The ALJ considered the opinion evidence from Dr. Bakhit but gave it little weight, finding his opinions "are inconsistent with the credible evidence of record, including Dr. Bakhit's own findings on examination—particularly his findings that the claimant had only paravertebral tenderness in her spine, some diminished range of motion with pain elicited primarily upon extension and lateral flexion, no gross neurological deficits in her upper or lower extremities and was able to ambulate unassisted (Exhibits 10F, 16F, 29F, 30F, 36F)." (R. 30.) In making this finding, it is clear that the ALJ considered the extensive medical evidence and did not ignore certain objective evidence as Richards contends. Indeed, the

6

ALJ considered and discussed the examination findings of Dr. Joiner, revealing tenderness in the periscapular, left lumbar paraspinal and gluteal areas and decreased lumbar lordosis (R. 25); the records from Dr. Bakhit, which assess cervical and lumbar facet joint arthropathy (R. 26- 28); and the CT scan of the spine from April 2014 (R. 28).[3]

Additionally, Richards's argument that the ALJ erred in giving more weight to the opinions of the reviewing state agency physicians because they did not have all of the record evidence before them is misplaced. The ALJ considered all of the medical evidence of record, including evidence subsequent to the state agency physicians' opinions. And while the ALJ noted he generally agrees with the state agency physicians' assessments, he gave greater weight to the opinion of medical expert Dr. Cooke, who did have all of the evidence before him, as it is "consistent with the credible evidence of record, particularly the minimal findings on diagnostic testing and examination, the lack of significant upper or lower extremity strength deficits and the conservative nature of the claimant's treatment." (R. 31.)

The court finds no fault in either the magistrate judge's or the ALJ's reference to the fact that Richards was exercising and working at the Botetourt Athletic Club during the relevant period. As the ALJ noted, the evidence suggests that Richards engaged in a level of activity that contradicts the degree of limitation found in Dr. Bakhit's opinions and that Richards alleges. (R. 30.)

---

[3] Richards argues the ALJ ignored R. 546, which is a record from urgent care dated February 2010, prior to the alleged onset date. Richards presented after falling on ice. The examiner noted tenderness of the thoracic wall and mild echymosis with left paramuscle spasm. Diagnosis was contusion of the thoracic spine and upper back strain. Richards also cites one record of Dr. Bakhit's as objective evidence documenting antalgic gait. This argument is a bit misleading as in this record, R. 801, Dr. Bakhit notes Richards reported "low back pain is increased, secondary to an antalgic gait." In any event, the ALJ considered these June 2012 records from Dr. Bakhit. (R. 26.)

7

In sum, the ALJ's decision to give little weight to the opinions of Dr. Bahkit is supported by the evidence of record and consistent with the requirements of 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ's explanation is thorough, well supported by the record, and sufficient to allow for meaningful judicial review. The court finds no error in the magistrate judge's decision in this regard.

## IV.

Richards next argues the magistrate judge erred in concluding the ALJ properly evaluated her mental impairments pursuant to Social Security Ruling 96-8p. The ALJ found Richards has moderate limitations in concentration, persistence, or pace (R. 20), and in his RFC assessment, he limited her to simple, repetitive tasks and minimal contact with the general public. (R. 21.) Richards argues the ALJ failed to build a logical bridge from the evidence to his conclusion, leaving the court to guess as to how he accommodated her moderate impairment in concentration, persistence, or pace by a limitation to simple, repetitive tasks with minimal contact with the general public, in violation of the Fourth Circuit's decisions in Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), and Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). Richards contends this RFC limitation only addresses skill level and not her ability to stay on task. Pl.'s Obj., ECF No. 27, at 7.

As the magistrate judge correctly notes (and Richards recognizes), Mascio does not stand for the proposition that moderate limitations in concentration, persistence, or pace always translate into a limitation in the RFC. 780 F.3d at 638. It is incumbent upon the ALJ to adequately explain his RFC findings, however. The ALJ did so here.

In finding Richards moderately limited in concentration, persistence, or pace, the ALJ observed that Richards is "able to pay bills, handle money and has been noted to have no significant memory or attention deficits." (R. 20.) He noted, however, that she had "some difficulty handling stress, handling changes in a routine and following instructions (Exhibits 8E, 4F, 11F, 15F, 18F, 20F)." (R. 20.) This finding is consistent with the testimony of medical expert Dr. Robert Muller, who stated that Richards's mental symptoms were reasonably controlled with medication but were aggravated by situational stressors. (R. 185-86.) Dr. Muller further testified that Richards is "certainly capable of simple, routine type tasks" and "might actually be capable of even more complex tasks." (R. 187.) Richards's discomfort in public places led Dr. Muller to recommend she have minimal contact with the general public. (R. 188.) In response to the ALJ's question about whether Richards would have issues staying on task or maintaining attention, concentration, persistence or pace, Dr. Muller responded "I would see mild difficulties," which, he explained, is the reason he would limit her to "simple, repetitive tasks." (R. 188.)

The ALJ gave Dr. Muller's opinion great weight, finding it to be consistent with the credible evidence of record. The ALJ thoroughly examined that evidence in his decision. He noted that Richards had not seen a mental health specialist since 2013 and had been able to function well since then, with stable and well-controlled anxiety and bipolar symptoms. (R. 30.) The ALJ explained that his RFC assessment was based on the minimal objective findings of record, the limited degree and conservative nature of the treatment Richards had received, her daily activities, which the ALJ noted where "contraindicative of [an] individual

9

with a completely debilitating condition" (R. 30), and the opinions of medical expert Dr. Muller. (R. 31.)

The court disagrees, therefore, with Richards's argument that the ALJ failed to build a logical bridge between the evidence and his conclusion that Richards's mental impairments limit her to simple, repetitive tasks and minimal contact with the general public. It is clear from both the ALJ's decision and the administrative hearing transcript that this conclusion is based directly on the opinion of Dr. Muller, to which the ALJ gave great weight because it is consistent with the record evidence.

In her objections, Richards points to the opinion of reviewing state agency physician Jo McClain, Psy. D. She argues the ALJ fails to address the fact that Dr. McClain limited her to "routine tasks for one hour blocks of time and regular breaks," which are provided "at two hour intervals . . . not one hour intervals," and, "consequently, Dr. McClain's opinion confirms that plaintiff cannot maintain tasks for the amount of time required for competitive employment." Pl.'s Obj., ECF No. 27, at 5. Richards mischaracterizes Dr. McClain's opinion. Dr. McClain found Richards to have moderate limitations in her ability to maintain attention and concentration for extended periods, noting that Richards's depressive and anxiety symptoms would "limit but not preclude her ability to perform detailed work, maintain focus, and completely workweek without interruptions." (R. 228.) Dr. McClain went on to state that she "is capable of performing 1-3 step tasks on a routine basis for *2 hour blocks of time* and regular breaks." (R. 228 (emphasis added).) This is in line with the ALJ's RFC assessment. In any event, the ALJ made clear that while he generally agreed with

10

the opinions of the reviewing state agency physicians, he gave the opinion of medical expert Dr. Muller greater weight, and that is reflected in the RFC assessment.

The ALJ adequately explained how the RFC accounted for Richards's mental impairments and did not leave the court to guess as to how he arrived at his conclusions. His analysis meets with the requirements of both <u>Mascio</u>, 780 F.3d at 638 and <u>Monroe</u>, 826 F.3d at 189. As such, the court finds no error in either the ALJ's decision or the magistrate judge's report.

## V.

Finally, Richards objects generally to the magistrate judge's determination that the ALJ's credibility finding is supported by substantial evidence. Richards points to certain medical evidence she argues supports the severity of symptoms she claims. As noted above, however, the ALJ exhaustively considered this and all of the medical evidence in his decision, as well as Richards's allegations as to her functional capacity. The ALJ correctly found that diagnostic testing revealed only mild findings, examinations were generally unremarkable, and her treatment has been routine and conservative. (R. 29-30.) The ALJ noted that Richards had engaged in activities that suggest she is not as limited in her ability to function as she claims to be. In finding her allegations to be not entirely credible, the ALJ recognized that Richards's impairments cause some limitations. "However, the totality of the evidence fails to substantiate that her limitations are of the degree and intensity alleged and that they are of a nature of preclude her from performing basic work activities, at least at the limited light exertional level." (R. 30.)

In short, the ALJ conducted a proper credibility analysis in this case. Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)).

## VII.

The court has reviewed the magistrate judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Richards properly objected. The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered: 03-27-2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge